UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CR-330-D

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALFRED LAMONT CROWDER | SENTENCING MEMORANDUM |

The Defendant, Alfred Lamont Crowder, by and through counsel, respectfully submits this sentencing memorandum in support of his request for a reasonable sentence, as well as in support of his sentencing objections to the presentence report ("PSR"). Because Hobbs Act robbery does not categorically qualify as a "crime of violence" under Section 4B1.2 of the Sentencing Guidelines, Mr. Crowder does not qualify as a career offender. The PSR errs in concluding otherwise. Mr. Crowder respectfully requests that this Court sustain his sentencing objections and find that the recommended Guideline range for Count One is 84 to 105 months. A sentence of no more than 84 months on Count One would be "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a). *Pepper v. United States*, 131 S. Ct. 1229, 1240 (2011) (*citing Williams v. New York*, 337 U.S. 241, 247 (1949)).

## ARGUMENT

**A. Mr. Crowder is not a Career Offender Because His Instant Offense, Hobbs Act Robbery, Does Not Qualify as a Crime of Violence Under the Guidelines**.

Under Section 4B1.1(a) of the Sentencing Guidelines, a defendant is a career offender if, among other factors, the instant federal offense is a "crime of violence" or a "controlled

1

substance offense" as defined by the Guidelines, and the defendant has two prior felony convictions that qualify as the same. U.S.S.G. § 4B1.1(a). Here, Mr. Crowder does not qualify as a career offender because the instant federal offense, Hobbs Act robbery, does not qualify as a "crime of violence."[1] Because the instant federal offense does not qualify as a crime of violence, Mr. Crowder cannot be classified as a career offender.

Under the Guidelines, a "crime of violence" is any offense under federal or state law that is punishable by imprisonment for a term exceeding one year that:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another [the force clause], or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c) [the enumerated offenses clause].

U.S.S.G. § 4B1.2(a). Thus, to be a crime of violence, an offense must fall within either the "force clause" or the "enumerated offenses clause" of § 4B1.2(a). If the offense does not fall within either clause, the offense does not qualify as a crime of violence and cannot be used as a career offender predicate.

To determine whether an offense qualifies as a crime of violence under the Guidelines, courts "apply the familiar categorical approach." *United States v. Salmons*, 873 F.3d 446, 448 (4th Cir. 2017). The categorical approach applies to both prior convictions and instant offenses. *See, e.g.*, U.S.S.G. § 4B1.2 cmt. n.2 (providing that the categorical approach controls in determining whether "the instant and prior offenses" are crimes of violence); *United States v. Martin*, 215 F.3d 470, 474 (4th Cir. 2000) (applying categorical approach to instant conviction "no matter

---

[1] There is no suggestion that Hobbs Act robbery could qualify as a "controlled substance offense."

how clear it may be from the record" that the defendant committed a crime of violence); *United States v. Johnson*, 953 F.2d 110, 114 (4th Cir. 1991) (noting the "substantial intuitive appeal" of applying a circumstance-specific approach to instant offenses but nonetheless concluding that the approach "must . . . be rejected" under the "plain language" of revised Guideline commentary).

When employing the categorical approach, courts focus on the elements of the offense rather than the conduct underlying the offense. *United States v. Dozier*, 848 F.3d 180, 183 (4th Cir. 2017) (citing *Taylor v. United States*, 495 U.S. 575, 602 (1990)); *accord United States v. McCollum*, 885 F.3d 300, 304 (4th Cir. 2018) ("*Taylor*'s categorical approach serves as the cornerstone of our analysis of whether a prior offense qualifies as a 'crime of violence' under Section 4B1.2(a).") (quotation marks and citation omitted). To qualify as a crime of violence under the categorical approach, the elements of the offense at issue must correspond to the elements of the enumerated offense. *Dozier*, 848 F.3d at 183.

If some conduct that would be a crime under the statute would not be a "crime of violence" under § 4B1.2(a), then any conviction under that statute will not qualify as a "crime of violence" for a sentence enhancement under the Guidelines, regardless of whether the conduct that led to a defendant's prior conviction was in fact violent. As the Supreme Court said in *Descamps*, "if the statute sweeps more broadly" than the § 4B1.2(a) definition—that is, if some conduct would garner a conviction but would not satisfy the "crime of violence" definition—then any "conviction under that law cannot count as a ['crime of violence'] predicate." *Descamps v. United States*, 133 S. Ct. 2276, 2281(2013); *see id*. at 2283. In short, "a prior crime would qualify as a predicate offense in all cases or in none." *Id.* at 2287.

**(1) Hobbs Act Robbery Does Not Fall Within § 4B1.2(a)(1)'s "Force Clause" Because It Does Not Require Force Against the Person of Another.**

To qualify under the force clause, the offense in question must have "as an element the use, attempted use, or threatened use of physical force *against the person of another*." U.S.S.G.§ 4B1.2(a)(1) (emphasis added). Physical force means "'*violent* force—that is, force capable of causing physical pain or injury *to another person*.'" *Salmons*, 873 F.3d at 448 (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)) (emphasis added). However, Hobbs Act robbery, as proscribed by 18 U.S.C. § 1951(a), does not require physical force "against the person of another." Instead, Hobbs Act robbery may be committed by means of threatened force or injury, immediate or future, against "property." *See* 18 U.S.C. § 1951(b)(1) (defining "robbery"). Because Hobbs Act robbery may be committed by threatening only future injury to property, the offense does not require, as an element, "physical force against the person of another" as needed to qualify under the force clause of § 4B1.2(a)(1).

Given that Hobbs Act robbery "sweeps more broadly" than the force clause, *Descamps*, 133 S. Ct. at 2281, it does not fall within § 4B1.2(a)(1). *United States v. O'Connor*, 874 F.3d 1147, 1148 (10th Cir. 2017) (holding that Hobbs Act robbery is not a crime of violence under the Guidelines); *accord United States v. Camp*, 903 F.3d 594 (6th Cir. 2018); *see also United States v. Walker*, __ F. Supp. 3d __, 2018 WL 2272714, *11 (E.D.N.Y. 2018) ("Hobbs Act Robbery, examined categorically, is not a crime of violence under the Guidelines, because elements of the statute sweep more broadly than common law robbery and the force clause."). Accordingly, Hobbs Act robbery does not qualify as a crime of violence under the force clause.

### (2) Hobbs Act Robbery Does Not Fall Within § 4B1.2(a)(2)'s "Enumerated Offenses Clause" Because It Does Not Qualify as Generic Robbery.

Similarly, Hobbs Act robbery does not fall within the "enumerated offenses clause" of § 4B1.2(a)(2). Of the offenses listed under § 4B1.2(a)(2), Hobbs Act robbery could only qualify, if at all, as generic "robbery." The Fourth Circuit has defined generic robbery under § 4B1.2(a)(2) as "the misappropriation of property under circumstances involving [immediate] danger to the person." *United States v. Gattis*, 877 F.3d 150, 156 (4th Cir. 2017). The element of "immediate danger" is "categorically satisfied by the taking of property from a person or a person's presence by means of force or putting in fear." *Id.* (quotation marks and citation omitted). Thus, generic robbery requires force directed at *persons* and does not encompass threats of force or injury to *property*. *See id.*; *see also O'Connor*, 874 F.3d at 1155 ("[G]eneric robbery encompasses a threat to a person but not to property alone."). Because Hobbs Act robbery may be accomplished by threat of force or injury to property, it is broader than generic robbery. *O'Connor*, 874 F.3d at 1155 ("Because Hobbs Act robbery encompasses threats to property and generic robbery excludes threats that are limited to property, the minimum conduct necessary to constitute Hobbs Act robbery does not categorically fall within generic robbery."); *Walker*, *supra* at *11 (Hobbs Act robbery does not qualify as generic robbery). As Hobbs Act robbery "sweeps more broadly" than generic robbery, Hobbs Act robbery cannot fall within the enumerated offenses clause of § 4B1.2(a)(2).

Because Hobbs Act robbery encompasses the threat of force or injury to property, it does not categorically fall within § 4B1.2(a)'s force clause or enumerated offenses clause. Accordingly, Hobbs Act robbery is not a crime of violence under the Guidelines. *See O'Connor*, 874 F.3d at 1158 ("Hobbs Act robbery under § 1951(b)(1) does not qualify as a crime of violence for

purposes of § 4B1.2 of the Guidelines[.]"); *Walker*, *supra* at *11-12 (same); *Camp*, 903 F.3d 594 (same).

Because Hobbs Act robbery is not a crime of violence for career offender purposes, Mr. Crowder's conviction under 18 U.S.C. § 924(c) likewise cannot be a crime of violence for career offender purposes. Under § 4B1.2, a violation of 18 U.S.C. § 924(c) qualifies as a crime of violence only "if the offense of conviction established that the underlying offense was a 'crime of violence.'" U.S.S.G. § 4B1.2 cmt. n. 1; *see Walker, supra* at *12 (because Hobbs Act robbery is not a crime of violence under the Guidelines, the accompanying conviction under § 924(c) is also not a crime of violence)*; see generally United States v. Robinson*, 447 F. App'x 512, 514–15 (4th Cir. 2011) (for a § 924(c) offense to qualify as a crime of violence, the underlying offense must qualify as a crime of violence). As none of Mr. Crowder's instant federal offenses qualifies as a crime of violence, the probation officer has erred in designating Mr. Crowder as a career offender.

The erroneous career offender designation increases Mr. Crowder's criminal history category from V to VI, *see* PSR at ¶ 49, and elevates his offense level on Count One from 26 to 32, *id.* at ¶ 90, resulting in a recommended imprisonment range of 151 to 188 months, *id.* at ¶ 92. But for the improper career offender designation, Mr. Crowder's imprisonment range on Count One would be 84 to 105 months (based on a criminal history category of IV and a total offense level of 23). Mr. Crowder respectfully requests that this Court sustain his sentencing objections and find that the correct Guideline imprisonment range for Count One is 84 to 105 months.

**B. A Sentence of No More Than 168 Months is Appropriate Under 18 U.S.C. 3553(a).**

Mr. Crowder will be 48 years old three days after his sentencing in the instant matter. On Count Two, he is subject to a mandatory sentence of imprisonment of 84 months to be run

6

consecutively to any other sentence. PSR ¶¶ 92–93. A guideline sentence of 84 months on Counts One and Three, followed by the mandatory consecutive sentence of 84 months on Count Two results in a sentence of 168 months, or 14 years. This would result in his release from federal custody when he is very close to, or even at, the age of 60. Moreover, it will be followed by five years of supervised release, which will put him well into his 60s when his entire sentence has expired. A recent report by the United States Sentencing Commission found that "across age groupings… recidivism measured by rearrest, reconviction, and reincarceration declined as age increased." Exhibit 1, *The Effects of Aging on Recidivism Among Federal Offenders*, United States Sentencing Commission, December 2017, at 9. In fact, offenders age 60 or older upon release had the lowest rearrest rate—16.4%—of any age group in the report. *Id*. at 22. Given Mr. Crowder's age upon release and corresponding low risk of recidivism, a sentence of no more than 168 months will adequately afford deterrence to criminal conduct and protect the public from future crimes.

Moreover, Mr. Crowder's behavior in this case was an aberration. True, he has a long criminal record. However, his prior crimes were virtually all nonviolent. The only ones that could arguably be considered violent are a 1987 misdemeanor conviction for Rioting, and misdemeanor convictions sustained in 1998 and 1999 for Resisting a Public Officer. PSR ¶¶ 18, 34, 36. Not only are these misdemeanor convictions only *arguably* violent, they also occurred over 19 years ago. Additionally, only *one* of Mr. Crowder's prior convictions, which also occurred over 19 years ago, involved a firearm. PSR ¶ 37. There is no indication Mr. Crowder used the firearm in any manner in that case, as it was a conviction for Possession of a Firearm by a Felon. Over the past 19 years, his only convictions are for nonviolent drug crimes. PSR ¶ 38-

7

45. The character letters submitted by friends and family members further corroborate that Mr. Crowder is not, by nature, a violent person.

The instant offense is no doubt extremely serious: Mr. Crowder robbed a business of over $20,000 and pointed a firearm at an employee.[2] However, Mr. Crowder has never before done anything of the sort. In this respect, Mr. Crowder's history is relevant to the need to protect the public from further crimes. Because he has never before committed a violent felony, it stands to reason that he poses less of a risk to recidivate in this manner than someone who has committed multiple violent felonies. By ensuring that he spends well over a decade in prison and is not released until nearly age 60, a sentence of no more than 168 months balances the seriousness of the crime with the fact that Mr. Crowder has never before committed such a crime.

The instant offense occurred at a very stressful, difficult time in Mr. Crowder's life, and he is deeply ashamed of and remorseful for his actions. Since his marriage to Tammy Crowder, *nee* Pulley, Mr. Crowder has taken pride in caring for his and his wife's family. Tammy worked, and Mr. Crowder took care of the children and the home. He raised his son, Parrish, and also three of Tammy's children: Rodriquez, Chiquita, and Raquel, from a young age. However, when 18-year-old Rodriquez was murdered on the doorsteps of the family in 2009, everything in the Crowder family changed. Rodriguez's death deeply affected everyone in the family, but it absolutely destroyed Tammy. PSR ¶ 57. She started drinking heavily and stopped working. Mr. Crowder took over the finances. He made efforts to bring in income via the ice cream truck and a tax preparation business. PSR ¶ 66–67. Although he attempted to remain strong for the family, he too struggled with Rodriquez's death. Rather than burden his family further, he found himself gambling in an effort to district himself.

---

[2] Mr. Crowder did not injure or verbally threaten to injure the victim.

The family remained in the same home for a year after Rodriquez's death, but then, in 2010, moved to Wake Forest. Mr. Crowder, Tammy, Raquel, Chiquita, and Chiquita's son lived together in the three-bedroom home. Tammy went back to work part-time, but she still struggled with the death of her youngest son. She would work for a while, and then slip back into a deep depression and stop showing up to her job. She would be fired. She would find a new job, and the cycle would start again. In 2015, Mr. Crowder's mom moved in with them. The family was bursting at the seams of the three-bedroom house, so they moved to a bigger house in May of that same year. The rent payments were higher. The utility costs were higher. Chiquita was unable to contribute to the rent because she was not working. Raquel was working at Wendy's and only able to contribute $200 per month in rent. At the time of the offense, Mr. Crowder was approximately two months behind on rent, three months behind on car payments, and months behind on the utilities.

Mr. Crowder felt helpless—like he was unable to provide for his family. His inability to cope with the financial pressure of being the head of the family led Mr. Crowder to commit the instant offense. These circumstances are not an excuse for Mr. Crowder's actions. But they provide context for what provoked him to engage in such an out-of-character act. This history and characteristics, the nature and circumstances of the offense, the need to promote respect for the law, provide just punishment, afford deterrence, and keep the public safe all counsel that a sentence of no more than 168 months' imprisonment followed by five years of supervised release is appropriate in this case.

## CONCLUSION

For the reasons stated herein, Alfred Crowder asks this Honorable Court to sustain his sentencing objection, and to impose a sentence of no more than 168 months' imprisonment.

Respectfully requested this 10th day of October, 2018.

>G. ALAN DUBOIS
>Federal Public Defender
>
>/s/ Halerie F. Mahan
>HALERIE F. MAHAN
>Assistant Federal Public Defender
>Attorney for Defendant
>Office of the Federal Public Defender
>150 Fayetteville Street, Suite 450
>Raleigh, North Carolina 27601
>Telephone: 919-856-4236
>Fax: 919-856-4477
>E-mail: Halerie_Mahan@fd.org
>LR 57.1 Counsel Appointed

*CERTIFICATE OF SERVICE*

      I HEREBY CERTIFY that a copy of the foregoing was served upon:

DANIEL W. SMITH
Assistant United States Attorney
310 New Bern Avenue
Suite 800
Raleigh, NC 27601

by electronically filing the foregoing with the Clerk of Court on October 10, 2018, using the CM/ECF system which will send notification of such filing to the above.

      This the 10th day of October, 2018.

                            /s/ Halerie F. Mahan
                            HALERIE F. MAHAN
                            Assistant Federal Public Defender
                            Attorney for Defendant
                            Office of the Federal Public Defender
                            150 Fayetteville Street, Suite 450
                            Raleigh, North Carolina 27601
                            Telephone: 919-856-4236
                            Fax: 919-856-4477
                            E-mail: Halerie_Mahan@fd.org
                            LR 57.1 Counsel Appointed